**SIGNED THIS: August 3, 2017**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re | ) | |
|---|---|---|
| | ) | Case No. 17-70023 |
| TREVOR RYAN PLANCK, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

# O P I N I O N

This case is before the Court on the United States Trustee's Motion to Dismiss Pursuant to 11 U.S.C. §§707(b)(1) and (b)(2) or in the Alternative Motion to Dismiss Pursuant to 11 U.S.C. §707(b)(3) ("Motion to Dismiss"). After considering the evidence and arguments of counsel presented at a hearing on the Motion to Dismiss, the Court finds that the Motion to Dismiss should be granted. Prior to the entry of a dismissal order, however, the Debtor will be given the opportunity to convert this case to Chapter 13.

## I. Factual and Procedural Background

Trevor Planck ("Debtor") filed his voluntary petition under Chapter 7 on January 6, 2017. On his petition, he acknowledged that his debts were primarily consumer debts, and, on his Schedule E/F, he listed over $105,000 in non-priority, unsecured debt. On his Schedule I, the Debtor disclosed that he was employed by the State of Illinois, had gross earnings of $4954 per month, and, after mandatory deductions, took home $3216 per month. The Debtor's Schedule J identified $6611 in monthly expenditures, including over $2000 in monthly credit card and unsecured debt payments expected to be discharged through this case.

The Debtor filed his Chapter 7 Statement of Your Current Monthly Income—Official Form 122A-1, wherein he disclosed that his income had averaged $4916.47 per month during the six-month period preceding his filing. He acknowledged that his annualized income of $58,997.64 exceeded the Illinois median income for a household of one person. Because he was "over the median," the Debtor then completed a Chapter 7 Means Test Calculation—Official Form 122A-2. On his Form 122A-2, he listed what he claimed were his allowable expenses, calculated his projected disposable income to be only $8.32 per month, and checked the box asserting that his means test calculation resulted in no presumption of abuse.

The United States Trustee ("UST") timely filed a statement of presumed abuse and her Motion to Dismiss. In the Motion to Dismiss, the UST asserted that, although the Debtor correctly calculated his income on his means test form, he claimed improper or unavailable deductions for some of his expenses.

Specifically, the UST objected to the Debtor's claimed deductions of $539 for rent in excess of the allowable standard for housing, $46 per month for unsubstantiated additional health care expenses, $30 in extra telecommunications expenses, and $250 in unsupported charitable contributions. The UST alleged that, if the objected to deductions were disallowed, the Debtor would be able to pay a significant dividend to his unsecured creditors, and therefore his filing was an abuse of Chapter 7. The UST also argued in the Motion to Dismiss that the Debtor's lease of a home for $1800 per month and certain of his other expenditures, including his voluntary retirement contributions, demonstrated abuse under a totality of the circumstances analysis.

The Debtor responded to the Motion to Dismiss by asserting that the additional $539 he claimed for his rental expense was an actual expenditure and was justified by the special educational needs of his ex-fiancée's daughter, which could only be met by renting a home in the Chatham School District. He also claimed that he had provided documentation to support the other questioned deductions and that he would continue to provide additional documentation to justify those deductions. He requested an evidentiary hearing be scheduled to allow him to testify as to his good faith in filing his petition under Chapter 7.

An evidentiary hearing was held on May 24, 2017. Prior to the hearing, the UST and the Debtor filed a joint stipulation. In large measure, the stipulation simply recited uncontested facts easily discernible from the record and the documents filed by the Debtor. New information in the stipulation included the fact that on September 29, 2016, the Debtor, along with his ex-fiancée, had entered into to a lease of a residence in Chatham, Illinois ("Chatham residence"),

for $1800 per month. The Debtor and his ex-fiancée expected to occupy the Chatham residence along with the ex-fiancée's minor daughter. The ex-fiancée had agreed to pay $500 per month toward the rent with the Debtor paying the $1300 balance. A copy of the lease was attached to the stipulation. The UST and the Debtor also stipulated that the Debtor's witness, Mike George, if called to testify, would have competently testified, based on his extensive experience and education, that, in his expert opinion, $1800 is a reasonable amount to be paid to rent a residence in Chatham large enough to accommodate three people.

The Debtor testified at the evidentiary hearing. Regarding the Chatham residence, he said that, at the time he entered into the lease, he was engaged and expected to occupy the premises with his then fiancée and her daughter. The daughter has learning disabilities and was, at the time, already enrolled in the Chatham School District where her special needs were being met. The daughter's father resided within the school district, and the daughter's enrollment in the district was predicated on her father's residence and his role as her primary custodian. According to the Debtor, his then fiancée's dissolution of marriage judgment required that her daughter be enrolled in the Chatham School District and provided that his fiancée could only be listed on school records as her daughter's primary custodian if she moved into the district. Accordingly, he agreed to enter into the lease for the Chatham residence to facilitate his then fiancée's compliance with the provisions of her dissolution of marriage judgment.

The Debtor admitted that his engagement had ended and that his now ex-

fiancée had moved out of the Chatham residence in February 2017.[1] The Debtor stated, however, that during the periods of time when his ex-fiancée has physical custody of her daughter, she moves back into the Chatham residence with the daughter. Because their relationship has deteriorated so seriously, during the periods of time when his ex-fiancée occupies the house, the Debtor moves out.

The Debtor also testified regarding his auto loan at Citizens Equity First Credit Union ("CEFCU"). In his means test calculation, the Debtor had deducted $710 for his monthly payment to CEFCU secured by his 2011 Chevrolet Silverado truck. He acknowledged that, although he had been making a $710 monthly payment to CEFCU before filing bankruptcy, only $433.68 of that amount was for his auto loan. The balance was for payment on unsecured debt owed to CEFCU. He admitted that his means test calculation should be adjusted to correct his error.

With respect to his charitable contributions, the Debtor testified that he was an active member of First United Methodist Church and had committed to a 10% tithe to the church. He said that he had not been able to meet his tithe commitment but had been donating approximately $250 per month to the church. His donations were made in cash, and he acknowledged that he had no cancelled checks or receipts for the donations. He said that he did not donate by check because he was trying to phase out his checking account.

---

[1] The Debtor said that he lived in a household of one person when he filed his case on January 6, 2017, and his means test calculation is based on that representation and on only his income and expenses. His testimony that his ex-fiancée moved out of the Chatham residence in February 2017 suggests that she was still living with him when he filed. But no other evidence presented at the hearing suggested that the date-of-filing means test calculation should have been based on a household of three or should have included the income and expenses of the ex-fiancée and her daughter.

-5-

The Debtor identified his prescription medication records from Walgreens and said that he was taking numerous prescriptions for a variety of ailments. He stated that he had calculated his extra deduction for medical expenses based not only on the prescription expenses but also on other out-of-pocket expenses for doctor visits and treatments. He acknowledged that he had not provided any records or proof of his other medical expenses, and he did not provide testimony about the amounts of any out-of-pocket medical expenses he regularly incurs.

With respect to his retirement accounts, the Debtor admitted that he was making voluntary contributions of $150 per month. He also acknowledged that the $113 per month payment to T. Rowe Price shown on his Schedule J was related to a loan from his deferred compensation account. He also discussed his student loan payments of $462.70 per month. He said that some of the student loans were incurred for his own education but others were loans he co-signed for his stepson. As part of his dissolution of marriage judgment with his ex-wife, she was ordered to refinance the loans incurred by her son but had yet to do so, leaving the Debtor liable on the loans.

The Debtor concluded his testimony by stating that he did not lead a luxurious lifestyle. He assured the Court that he had made every effort to provide complete and accurate information on all of his bankruptcy paperwork.

The only other witness to testify at the hearing was Megan Shaw, an analyst in the UST's office responsible for the review of debtors' Chapter 7 means test forms. Ms. Shaw identified a spreadsheet she had prepared recasting the Debtor's means test calculation. She testified that she had reviewed the Debtor's pay advices for the relevant time periods and her calculation of the Debtor's income

was "to the penny" consistent with the Debtor's calculation. With respect to his expenses, however, Ms. Shaw reduced the Debtor's rent deduction to the IRS standard of $761[2], made an adjustment for the Debtor's error in reporting his CEFCU auto loan payment, credited the Debtor with only $13.97 in additional medical deductions based on the limited documents provided, and gave the Debtor no deductions for extra telecommunications expenses or charitable contributions because no documents in support of those expenses had been provided to her. Based on all her adjustments, Ms. Shaw calculated that the Debtor had $990.12 per month available to pay his unsecured creditors. Alternatively, she suggested that, if the Debtor were allowed to deduct his student loan payments, he would still have $535 per month for the payment of unsecured debt.

The parties presented their arguments at the close of evidence. The matter is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters involving the administration of the estate are core proceedings. 28 U.S.C. §157(b)(2)(A). The matters here arise directly from the Debtor's

---

[2] The IRS Standards draw no distinction between mortgage/rent and operating expenses for housing. *See* ILLINOIS—LOCAL STANDARDS: HOUSING AND UTILITIES, http://www.irs.gov/businesses/small-businesses-self-employed/illinois-local-standards-housing-and-utilities (last visited July 27, 2017). The UST Program, however, has divided the IRS Local Standard for housing into two distinct categories for mortgage/rent and insurance/operating expenses. As explained below, the allocation is not consequential to the outcome of this case.

bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III. Legal Analysis

*A. The UST's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(1) and (b)(2) Should be Granted.*

An individual debtor's case filed under Chapter 7 that involves primarily consumer debts may be dismissed if a court finds that granting relief to the debtor would be "an abuse of the provisions" of Chapter 7. 11 U.S.C. §707(b)(1). In considering whether the granting of relief would be an abuse of Chapter 7, abuse is presumed when a debtor's "current monthly income" reduced by certain statutorily defined expenses and multiplied by 60 "is not less than the lesser of—(I) 25 per cent of the debtor's nonpriority unsecured claims in the case, or $7,700, whichever is greater; or (II) $12,850." 11 U.S.C. §707(b)(2)(A)(i). Allowable expense deductions under the statute include the amounts specified in the Internal Revenue Service ("IRS") National and Local Standards, certain actual expenses, payments on account of secured debts, and payments for priority claims. 11 U.S.C. §707(b)(2)(A)(ii)-(iv). The calculation was introduced into the Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 and is frequently referred to as the means test.

A debtor is required to file a statement of current monthly income and the calculations that determine whether a presumption of abuse arises. 11 U.S.C. §707(b)(2)(C). If the presumption arises, a debtor may rebut the presumption only

by demonstrating "special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. §707(b)(2)(B)(i). To establish such special circumstances, a debtor must provide documentation for each expense or adjustment to income, must explain in detail why the expense or income adjustment is necessary and reasonable, and must attest under oath as to the accuracy of the information provided. 11 U.S.C. §707(b)(2)(B)(ii)-(iv).

When the UST moves to dismiss a case for abuse, the UST has the burden of proving abuse by a preponderance of the evidence. *In re Weixel*, 494 B.R. 895, 901 (B.A.P. 6th Cir. 2013) (citations omitted). If the UST asserts that a debtor's means test form contains errors in income or expenses, the UST has the burden to establish the correct figures by a preponderance of the evidence. *In re Williams*, 424 B.R. 207, 211 (Bankr. W.D. Va. 2010). Once the UST meets that burden, a prima facie case of abuse is established, the presumption of abuse arises, and the burden of establishing special circumstances shifts to the debtor. *Id.*

The UST does not dispute that the Debtor filed the required forms to calculate whether a presumption of abuse arose in this case—it is the accuracy of the calculations that is in dispute. The UST's analyst acknowledged that the Debtor's calculation of his current monthly income was "to the penny" correct. It is the Debtor's claimed expense deductions for his auto loan payment, rent, medical expenses, telecommunications expenses, and charitable contributions that are questioned.

The Debtor initially claimed $710 as his auto loan payment to CEFCU. He now agrees with the UST, however, that his actual monthly payment on his truck

is $433.68. The UST and the Debtor agree that he is entitled to deduct the greater of his actual loan payment or the IRS National Standard for vehicle ownership. The National Standard was $471 when the Debtor filed, so that is the allowable deduction. The difference between what the Debtor originally claimed and what he now agrees is actually deductible for his auto loan payment is $239. By agreement with the Debtor, the UST has established by a preponderance of the evidence that the Debtor's deduction for his truck payment was incorrect and the UST's proposed adjustment of $239 to that deduction is accurate.

The major dispute between the Debtor and the UST related to the Debtor's claim of the IRS Local Standard for rent of $761 plus an additional $539 based on the total rent the Debtor was actually paying. The UST asserted that the Debtor is entitled only to the Local Standard amount. In claiming his additional rent, the Debtor listed the expense on a line on his Official Form 122A-2 that allows a debtor to assert that the UST's division of the IRS Local Standards for housing between operating expenses and mortgage or rent expenses is incorrect. *See In re Currie*, 537 B.R. 884, 893 (Bankr. C.D. Ill. 2015) (UST's division of IRS Local Standard into two line items on means test form is not intended to deprive a debtor of the full standard if debtor has housing expenses). But the division of the Local Standard has nothing to do with the Debtor's actual argument.[3] Instead, the Debtor acknowledged that he was limited to a rent deduction of $761 unless he

---

[3] The IRS Local Standard for housing at the time of filing was $1193. For purposes of means testing, the UST allocated $432 of that amount for insurance, utilities, and operating expenses and $761 for mortgage or rent payments. On his Schedule J, the Debtor claimed $554 in utility expenses alone. Accordingly, a reallocation of the Local Standard between the two line items would not help him cover his extra rent expenses. Any reallocation would just leave the Debtor further in the hole on utility expenses.

was able to justify the extra rent as a special circumstance.[4] The Debtor therefore had the burden to show that the expenditure was reasonable and necessary and that there was no reasonable alternative to the expenditure. 11 U.S.C. §707(b)(2)(B).

Relying on *In re Scarafiotti*, 375 B.R. 618 (Bankr. D. Col. 2007), the Debtor asserted that additional rental expenses incurred for housing to ensure that a child with special needs is able to attend a school providing needed services qualifies as a special circumstance. *Id.* at 634. Although the *Scarafiotti* court did allow a modest increase in a housing allowance due to the debtors' child's special needs, the case is distinguishable from the situation here. The Debtor here had no legal or financial responsibility for his ex-fiancée's daughter at the time he filed this case, and that would have been true even if he was still engaged to the child's mother. And, of course, the fact that the Debtor's engagement ended before the case was filed and he no longer had a personal relationship with the child's mother further limited his claim that the expense was justified. Most importantly, however, the Debtor testified that the child was legitimately enrolled in the Chatham School District based on her father's residence within the district and the father's designation as the child's primary custodian. The reason the Debtor's ex-fiancée wanted to move into the district was to satisfy a condition of her judgment of dissolution of marriage allowing her to become the primary custodial

---

[4] In his response to the UST's Motion to Dismiss, the Debtor contended that, because a deduction would be allowed for the actual amount of a mortgage payment, the actual amount of his monthly rent payment should be deductible. But §707(b)(2)(A)(iii) clearly provides for the deduction of monthly payments on account of secured debts. There is no corresponding provision for lease or rental payments. The Debtor did not pursue this argument at trial, instead arguing that the additional rent was justified as a special circumstance.

parent only if she resided in the Chatham School District. Thus, according to the Debtor's own testimony, the child's enrollment in the Chatham School District was never in jeopardy and the increased rent cannot be justified as required to meet the child's special needs. The Debtor provided no explanation of why the obvious alternative to the increased rent—maintaining the child's father as her primary custodian pursuant to the terms of the judgment of dissolution of marriage—was unreasonable. Based on the Debtor's testimony, it is clear that the reason for incurring the increased rent was not to meet the needs of the child but to satisfy the desire of the child's mother to be her daughter's primary custodian. *Scarafiotti* provides no support for the Debtor's extra rent deduction, and the Debtor did not meet his burden of establishing that the additional rent is justified as a special circumstance. The additional $539 must be considered as available to pay unsecured creditors, and the UST's proposed adjustment to the Debtor's means test for that amount is correct.

The IRS National Standards, at the time of filing, provided that a debtor under 65 years of age could claim $54 for out-of-pocket medical expenses, and the Debtor claimed that amount. The UST did not object to that deduction. A debtor may also claim additional out-of-pocket medical expenses if the particular debtor's unreimbursed expenses exceed the National Standard allowance. The Debtor claimed an additional $46 for such expenses, and the UST objected to that deduction.

The Debtor testified at the hearing that he suffers from a variety of ailments and takes a number of prescription drugs. He identified his prescriptions list from Walgreens as the only document he had provided to the UST to justify his

additional deduction. Ms. Shaw, the UST analyst, testified that she had used the Walgreens information to calculate that the Debtor was entitled to an additional deduction of $13.97, rather than the $46 he had claimed. With this testimony, the UST established a prima facie case that the debtor's deduction was wrong and the UST's figure was correct. The Debtor provided no evidence in rebuttal. Although he testified at some length about his health problems, the Debtor provided no information, other than the Walgreens list, regarding his actual out-of-pocket expenditures. The difference between the claimed expense and the actual allowable deduction is $32.03, and that amount is available to pay unsecured creditors.

Debtors may also claim deductions for certain additional telecommunications expenses necessary for their health and welfare. The Debtor here claimed $30 for extra telecommunication expenses, and the UST objected to that amount in the Motion to Dismiss. But at the evidentiary hearing, the UST's attorney never asked the Debtor about the telecommunication expense deduction and never provided any evidence about what inquiries the UST had made about the claimed deduction or whether the Debtor had provided any support for the deduction. Ms. Shaw was the only witness who even mentioned the deduction, and she simply said that she had not received any supporting documentation for the deduction. But she did not testify that she had any direct communication with the Debtor about the deduction, and her testimony alone was insufficient to establish a prima facie case that the deduction taken by the Debtor should be disallowed. The UST failed to meet her burden of proof on this deduction.

The final disputed deduction raised in the Motion to Dismiss related to the

Debtor's charitable contributions. The Debtor deducted $250 per month for charitable contributions on his means test form, and the UST asserted that, because the Debtor admittedly does not have cancelled checks related to such contributions, the deduction must be disallowed.

In deciding whether a case should be dismissed for abuse, courts are specifically directed not to consider "whether a debtor has made, or continues to make, charitable contributions" to "qualified religious or charitable" organizations. 11 U.S.C. §707(b)(1). A "straightforward reading" of the provision compels courts not to consider "past or continuing" contributions as a negative factor to be held against a debtor in a §707(b) analysis. *In re Bender*, 373 B.R. 25, 29 (Bankr. E.D. Mich. 2007). "The legislative history of the provision indicates that Congress meant to emphatically reject cases that had dismissed chapter 7 petitions based on a debtor's continued charitable contributions." *Id.* (quoting 6 *Collier on Bankruptcy* ¶707.04 [4][a](15th ed. 2007)).

The attorney for the UST presented little evidence on the issue of the Debtor's charitable contributions. He asked the Debtor if he made the contributions he claimed to have made, and, when the Debtor said that he had, the attorney asked if the Debtor had provided cancelled checks. The Debtor admitted that he had not. Ms. Shaw also said that she had not received any cancelled checks or other documents regarding the charitable contributions claimed to be made by the Debtor. The UST's presentation appeared to assume that simply objecting to the Debtor's deduction of charitable contributions shifted the burden to the Debtor to prove his contributions under special circumstances standards. But that assumption was incorrect. The Debtor's right to deduct his

contributions is not found in §707(b)(2) but rather, as set forth above, in §707(b)(1). Thus, although the Debtor was required to present evidence of the contributions, he was not required to comply with the strict standards needed to prove special circumstances under §707(b)(2)(B).

The Debtor testified that he has been an active member of his church; he attends Sunday services and regularly serves as an usher at the services. He has made a written commitment to the church to tithe but, due to his current financial problems, has not been able to fully comply with that commitment. The Debtor said that he was doing the best that he could and had been contributing approximately $250 per month to the church. He admitted that he did not have cancelled checks for his contributions. He said that he made his contributions in cash because he was trying to phase out his checking account.

Strangely, the UST allowed the Debtor's testimony to go completely unchallenged. The Debtor was not asked whether he used any method of identifying his contributions to the church so the congregation would know of his efforts to comply with his tithe commitment. He was not asked why he was adverse to writings checks for this expense when his checking account records—admitted for other purposes—show dozens of monthly transactions on the account. He was not challenged on the fact that all of his State of Illinois pay is deposited directly into his checking account and therefore a withdrawal from the account had to be made—whether by check or cash—in order to make contributions to the church. The UST also did not question why the Debtor claimed $250 in deductions on his means test form but only $200 per month on his Schedule J filed the same day. Instead, the UST let of all of these

discrepancies remain unexplained, presumably based on the assumption that the lack of cancelled checks would be an absolute bar to the claimed charitable deduction. But, because the UST did not ask the questions, this Court cannot assume what the Debtor's answers would have been. Absent any challenge to his testimony, the Debtor established, albeit by the thinnest of margins, that his charitable contributions were being made and were a continuation of his past practices.

Considering the proposed adjustments to the Debtor's deductions for his truck payment to CEFCU, his rent, and his out-of-pocket medical expenses, the UST has established that the Debtor may have at least $810.03 more monthly income available to pay unsecured creditors than his original means test form reported. Even after adjusting for Chapter 13 trustee commissions, the Debtor appears to have more than $43,000 available to pay unsecured creditors through a 60-month Chapter 13 plan. That amount significantly exceeds the statutory amount of $12,850 that triggers the presumption that a filing is abusive and subject to dismissal.[5] 11 U.S.C. §707(b)(2)(A)(I).

---

[5] During closing argument, relying on this Court's decision in *In re Martin*, 371 B.R. 347 (Bankr. C.D. Ill. 2007), the Debtor's attorney argued that the Debtor's $462.70 monthly student loan payments constituted a special circumstance that justified an additional expense deduction. But nowhere in his means test calculation—particularly Part 4 of Form 122A-2 regarding special circumstances—did the Debtor seek such a deduction. And, more importantly, the Debtor provided no evidence that such a deduction was necessary and reasonable. The Debtor testified that some of the loans related to his stepson's education and that his ex-wife was required to refinance the loans under the terms the their dissolution of marriage judgment. Thus, the Debtor's own testimony supports a finding that he does have a reasonable alternative, at least, to some portion of the student loans—enforcement of the dissolution of marriage judgment in state court. In any event, adjusting the additional $810.03 in monthly income established by the UST to account for the student loan payments would still leave the Debtor with $347.33 more available monthly income than reported on his original means test form. After adjusting for Chapter 13 trustee commissions, the Debtor would have more than $19,000 available

A debtor's case may be dismissed when granting relief would be an abuse of Chapter 7, and the statute's use of the word "may" instead of "shall" indicates that this Court has some discretion to deny a motion to dismiss despite presumed abuse. *In re Mravik*, 399 B.R. 202, 206-10 (Bankr. E.D. Wis. 2008). But such discretion should not be exercised lightly. *Id.* at 210. Here, the presumption arises, in part, from correction of the Debtor's error regarding the amount of his truck payment, and it would be a mistake to exercise discretion to give him the benefit of that error. In large measure, the presumption arises because of the disallowance of the Debtor's extra rent claim. His own testimony established that entering into the lease was not necessary, and now, after his engagement has ended, it has become a transaction from which he should disentangle himself. This is not conduct that compels the exercise of the Court's discretion.

  The Debtor failed the means test. A presumption of abuse has arisen and his case must be dismissed unless he chooses to voluntarily convert to Chapter 13.

*B. The UST's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(3)*

*Should be Denied.*

A debtor's Chapter 7 case may be dismissed even though the debtor passed the means test if the debtor filed the petition in bad faith or if "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. §707(b)(3). This remedy is an alternative to the means test calculation and

---

to pay unsecured creditors over 60 months—still significantly more than the $12,850 statutory trigger.

may be pursued only if the presumption of abuse under the means test did not arise or was rebutted. *Id.* Here, because the Debtor did not pass the means test, the alternative theory of abuse being established by the totality of the circumstances need not be reached. Thus the issues will only be briefly discussed.

Generally, under a totality of circumstances test, the ability of a debtor to pay creditors is the primary factor to be considered. *In re Smith*, 2016 WL 7441605, at *3 (Bankr. N.D. Ill. Dec. 27, 2016). But courts also consider a variety of other factors including: (1) whether the bankruptcy petition was filed because of a sudden illness, calamity, disability or unemployment; (2) whether the debtor recently incurred cash advances or made improvident consumer purchases; (3) whether the debtor's budget is excessive or unreasonable; and (4) whether the debtor's schedules and other financial disclosures were accurate and fully disclosed the debtor's financial condition. *Id.*; *see also In re Deutscher*, 419 B.R. 42, 45 (Bankr. N.D. Ill. 2009). A totality of the circumstances analysis is "fact-intensive and considered on a case-by-case basis." *In re Watts*, 557 B.R. 640, 646 (Bankr. N.D. Ill. 2016) (citation omitted).

Here, the UST presented little evidence that would support a finding of abuse based on the totality of the circumstances. There was no evidence that the Debtor experienced any sudden illness, calamity, disability or unemployment. Although the Debtor suffers from many health problems, none of them were the immediate cause of his financial problems. But if his health problems had been the cause of the bankruptcy, that factor would weigh in favor of the Debtor in the analysis. Likewise, there was no evidence of the Debtor taking significant cash advances or making extravagant consumer purchases. The Debtor presented

himself as a credible witness and his paperwork was generally accurate. The Debtor's admitted error with respect to the amount of his CEFCU truck payment included on his Schedule J and means test form was understandable and was corrected when brought to the Debtor's attention.

In the Motion to Dismiss, the UST asserted only that the Debtor's rent and retirement contributions were excessive and unreasonable. At the hearing, the UST presented no evidence from which the Court could find that the Debtor's retirement contributions were either excessive or unreasonable. The UST did establish that the Debtor's rent exceeds the available allowance under the means test, and the Debtor was unable to rebut the presumption of abuse that arose from that proof. But paying more than the means test allowance for rent, or any other household expense, is not, in and of itself, proof that the expenditure is excessive or unreasonable. To the contrary, the UST stipulated that the Debtor could provide expert witness testimony that the amount of rent being paid for the Chatham residence was reasonable rent for the area.

The Motion to Dismiss under §707(b)(3) must be denied because it is an alternative remedy to dismissal under §707(b)(2) and can only be considered if a presumption of abuse did not arise under §707(b)(2) or if the presumption was successfully rebutted. Nevertheless, the Court must note that if it had reached the issue, the UST's proof fell well short of what would have been necessary to meet the burden proof on the totality of circumstances allegations.

### IV. Conclusion

The Debtor failed his means test; the UST established a presumption of

abuse that was not rebutted. Accordingly, this case must be dismissed unless the debtor voluntarily elects to convert to Chapter 13. If the case is dismissed, the dismissal will be without prejudice.

Although it is up to the Debtor to decide to convert now or to allow the dismissal to occur and consider filing Chapter 13 later, the Debtor might be wise to allow dismissal and prepare more thoroughly for a future Chapter 13 filing. In considering the means test calculations, this Court found that it appeared that the Debtor had approximately $810 per month to devote to payment of unsecured creditors. That finding is, of course, without prejudice to the Debtor to establish that he has more out-of-pocket medical expenses than he presented here or is entitled to other deductions not discussed here. Likewise, however, the finding is without prejudice to the Chapter 13 trustee to challenge all of the Debtor's deductions including those for telecommunications expenses and charitable contributions. The failure of the UST to fully prosecute objections to some of the Debtor's expenses will not prevent the Chapter 13 trustee from raising whatever questions he deems appropriate in calculating the Debtor's disposable income for Chapter 13 purposes.

The Debtor will be given 14 days to file a motion to convert to Chapter 13. If not filed, the UST's Motion to Dismiss will be granted without prejudice and without further notice or hearing.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###